## THE BRIXHAM.

### VELASCO TERMINAL RY. CO. v. THE BRIXHAM.

(District Court, E. D. Virginia. March 1, 1893.)

1. SALVAGE—AWARD—RIGHT OF CHARTERER TO SHARE.
   A steamer was chartered to carry a cargo to a certain port. The charter party provided that the steamer should "have liberty to tow and to be towed, and to assist vessels in all situations;" and the bill of lading provided that she should "have liberty to tow and assist vessels in dis-

tress, and to deviate for the purpose of saving life or property." The master and crew were in full control and charge of the steamer during the whole voyage, subject to no orders from the charterer, and there was no supercargo aboard. During the voyage she rendered salvage services to another vessel, and was thereby delayed for several days. *Held*, that the charterer was not entitled to any damages for the delay occasioned by the services rendered. The Persian Monarch, 23 Fed. Rep. 820, followed.

2. SAME.

Mere inert cargo is not entitled to share in a salvage award, solely because of the risk to which it was subjected. The Blaireau, 2 Cranch, 240, distinguished.

In Admiralty. Libel by the Velasco Terminal Railway Company against the steamship Brixham. On a petition of the owners of cargo claiming part of a salvage award made by this court in favor of the Brixham against the S. S. Chatfield for salvage services rendered by the Brixham to the Chatfield, and claiming damages for delay in delivering cargo in consequence of rendering the salvage service. Dismissed.

A. R. Hanckel, for petitioners.

Whitehurst & Hughes and Convers & Kirlin, for the Brixham.

HUGHES, District Judge. During the 27th, 28th, and 29th of December, 1891, the steamer Brixham rendered to the steamer Chatfield valuable and meritorious salvage service, for which this court made a decree awarding to the Brixham for the service and for bounty the sum of $12,500. 52 Fed. Rep. 479. At the time of rendering the salvage service, the Brixham was under charter to the Velasco Terminal Railway Company to carry a cargo of railroad iron and material from Philadelphia to Velasco, Tex., at an agreed freight per ton. The charter was not a demise. The master and crew remained in full control and charge of the Brixham from the beginning to the end of the voyage, subject to no orders from the charterer. The charter party contained a clause providing that the steamer should "have liberty to tow and be towed, and to assist vessels in all situations." The bill of lading provided that the steamer should "have liberty to tow and assist vessels in distress, and to deviate for the purpose of saving life or property." The owners of the freight had no supercargo on board, and there was no semblance or pretense of their having or exercising any authority or control over the steamer during the voyage, direct or indirect, actual or virtual.

The Brixham sailed from Philadelphia on the 25th of October, 1891. On the 27th, when she was nearly abreast of the Virginia capes, she saw the Chatfield flying signals of distress, and deviated from her voyage in order to render assistance. The service she rendered in bringing the Chatfield into Hampton Roads was pronounced by this court a meritorious salvage service. It occupied the Brixham until the 29th of October. During the progress of this service the Brixham sustained damages from the Chatfield, which she found it necessary to have repaired before proceeding on her voyage from Hampton Roads to Velasco. The time consumed in obtaining these

repairs was five days; so that the entire detention incurred in consequence of rendering the salvage service was nine days. The Brixham proceeded from Hampton Roads on the 5th of November, and ultimately reached Velasco with all of her cargo, for the delivery of which she obtained full receipts from its consignees.

The petition under consideration claims damages for delay in delivering the railroad material at Velasco, caused by the deviation of the Brixham from her course in saving the Chatfield, and prays that those damages may be paid out of the salvage money awarded to the Brixham by this court, and still under the court's control. It also prefers a claim to share in the salvage award, on account of the risk to which the railroad material was subjected by the Brixham in rendering the salvage service.

In regard to the claim for damages by delay resulting from this salvage service, I agree with the declaration of the court in the case of The Persian Monarch, 23 Fed. Rep. 820: "It seems to add a new horror to shipwreck to hold that, when the master of a vessel in distress accepts the services of another vessel for his rescue, he binds his owners to the owners of the cargo of such other vessel to pay them all damages resulting from the rendition of salvage service. Such cannot be the law." It would be a still greater discouragement of salvors if it were held that, in rendering salvage services to vessels in distress, they would be held liable to owners of cargoes on their own ship for damages for the mere delay resulting from such services, such as are claimed in this petition. "Such cannot be the law," and I must disallow the claim.

As to the claim of petitioners in this case to share directly in the salvage award, it is equally inadmissible. Salvage is awarded for actual, daring service, attended by risk to life and property. The mere fact of inert property being at risk does not entitle its owner, who may be safe on land, to share in a salvage award. Actual physical service attended by risk, and, in the case of a steamer or ship, risk or loss of property, are the chief ingredients of salvage service. Insentient, inert cargo cannot of itself participate in a salvage award. There were circumstances in the case of The Blaireau, 2 Cranch, 240, where the supercargo, who was also one of the charterers of the saving ship, was on board, in control of ship and cargo, and rendered material personal service in saving the other ship, to justify an award to the charterers. The supercargo was one of six men who left his own ship and went on board the one saved, to take her into port. It was under these circumstances that the supreme court allowed the owners of the cargo—that is to say, the charterers—of the saving ship to share in the salvage award. This case of The Blaireau is, I believe, the only one in which the supreme court of the United States has allowed the cargo, as such, to share in salvage awards. As a precedent, therefore, the case is not of value to show that inert, insentient cargo, by reason solely of risk, may be awarded salvage. I do not think it worth while to pass upon the defense, set up in the answer, of lis alibi pendens. The prayers of the petition must be denied. I will so decree.